**Aaron COOPER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–86–00032–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

March 23, 1989.

Rehearing Denied April 27, 1989.

Steven Wisch, Richard Frankoff, Henry Burkholder III, Houston, for appellant.

John B. Holmes, Dist. Atty., Harris County, Cathy Herasimchuk, Katy, for appellee.

Before EVANS, C.J., and COHEN and DUGGAN, JJ.

## OPINION ON SECOND MOTION FOR REHEARING

COHEN, Justice.

Our prior opinion is withdrawn, and this opinion is substituted in its stead. Appellant's second motion for rehearing is overruled.

After finding appellant guilty of burglary of a building, the jury found one of two enhancement paragraphs to be true, and assessed punishment at life imprisonment.

This case requires us to decide 1) whether appellant had ineffective assistance of counsel at the punishment stage of his trial, and 2) if so, whether the remedy is an entirely new trial, as provided by law in effect on the date of the crime and the date of the trial, or merely a new punishment hearing, as provided by Tex.Code Crim.P. Ann. art. 44.29(b) (Vernon Supp.1989), which took effect while this case was pending on appeal. We hold that counsel was ineffective and that a remand for a new punishment hearing is the appropriate remedy.

Appellant asserts that his trial counsel was ineffective at the punishment stage of trial where he failed to object to a void prior conviction alleged for enhancement, and where his trial counsel, by having appellant testify before the jury, incompetently allowed the State to cross-examine him about his lengthy criminal background. Appellant makes no complaints about his trial attorney's performance at the guilt stage of the trial.

The first enhancement paragraph alleged that appellant had been convicted in cause number 110646 in 1965 in Harris County for felony theft. The second alleged that appellant had been convicted in cause number 389272 in 1983 in Harris County for unauthorized use of a motor vehicle. Appellant pled not true to both paragraphs.

After the court admitted into evidence two penitentiary packets proving these two convictions, defense counsel called appellant to testify for "the purpose of making a record on 110646." Sensing trouble and trying to prevent it, the careful trial judge warned appellant's retained counsel, Thomas Jackson, as follows:

[THE COURT]: Mr. Jackson, you mentioned calling him for a specific purpose and I just want to advise you that if the defendant takes the stand, he takes the stand for all purposes.

[APPELLANT'S COUNSEL]: I understand.

[THE COURT]: I knew you did, but I wanted the record to know so that there in no confusing [sic].

Appellant then testified *before the jury* that cause number 110646 had been reversed on appeal. He offered no evidence of this, other than his own testimony. The prosecutor cross-examined appellant about other prior convictions, whereupon appellant admitted to 11 felony convictions in Louisiana for crimes including auto theft, unauthorized use of a motor vehicle, larceny, escape, and theft, and to one federal conviction for interstate transportation of stolen vehicles. The prosecutor asked appellant about the convictions one by one, identifying each by date, state, crime, and punishment. In answer to the prosecutor's questions, appellant denied another federal conviction for "flight to avoid justice" and a Missouri conviction for theft. All of this occurred before the jury, and without objection.

The jury found the first enhancement allegation (number 110646) to be not true and found the second enhancement allegation to be true. This apparently occurred because the prosecutor requested such findings in his unrecorded jury argument at the punishment stage. We glean this from the jury's note to the court during punishment deliberations stating, "The jury wishes to know: ... (2) reasons the D.A. wishes us to deem not true to enhancement number one."

Appellant's retained counsel was replaced on appeal by court-appointed counsel, who filed an amended motion for new trial asserting for the first time that cause number 110646 was void because in that case, the State had enhanced the punishment by proving two Louisiana felony convictions that had been obtained without counsel and without waiver of counsel. Attached to the motion was the Court of Criminal Appeals mandate and opinion granting post-conviction habeas corpus relief to appellant in *Ex parte Cooper*, 493 S.W.2d 810 (Tex.Crim.App.1973). This was the first time that appellant had proved the

invalidity of cause number 110646. Moreover, the Louisiana convictions declared void in *Ex parte Cooper* were among the 11 convictions that appellant admitted during cross-examination. All 12 convictions occurred between 1950 and 1962, before the landmark decision in *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed. 2d 799 (1963).

We must decide whether counsel was ineffective in exposing appellant to cross-examination *before the jury* concerning his long criminal history for the sole purpose of challenging the void conviction in cause number 110646. Counsel persisted in this tactic despite the court's warning that appellant would be subject to full cross-examination. Moreover, the record shows that appellant was not questioned on direct examination about anything other than cause number 110646. Appellant's direct examination consisted of five questions (his name, age, whether he remembered cause number 110646, whether he was imprisoned on that cause, and its outcome). Appellant's direct examination testimony totaled 21 words and presented no information to the jury on any other matter affecting his punishment. Thus, the decision to have appellant testify at the punishment stage was not made in order to present to the jury any other, generally beneficial information in an effort to get a lenient sentence. As trial counsel stated in offering appellant's testimony, it was only to inform the jury that cause number 110646 had been reversed. Plainly, no trial strategy justified having appellant testify before the jury, when the same testimony could have been presented outside their hearing without exposing the existence of the other convictions.

 Trial counsel made no request for a hearing outside the jury's presence, as contemplated by Tex.Code Crim.P.Ann. art. 40.09, § 6(d)(3), ch. 722, § 1, 1965 Tex.Gen. Laws 317, 481 *repealed by* ch. 685, § 4, 1985 Tex.Gen.Laws 2472, 2473. A hearing outside the jury's presence to determine the admissibility of a void conviction is required, upon request, as a matter of federal constitutional law, *Burgett v. Texas*,

389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967), and by the Texas Rules of Criminal Evidence, which took effect after the trial of this case, *see* Tex.R.Crim.Evid. 104(a), (c). By testifying upon such a preliminary matter out of the hearing of the jury, the accused does not subject himself to cross-examination on other issues. *Simmons v. United States*, 390 U.S. 377, 389–94, 88 S.Ct. 967, 973–76, 19 L.Ed.2d 1247 (1968). *Simmons* held that such a rule was required by the United States Constitution, and the same result is now required by Tex.R.Crim.Evid. 104(d).

■▬▬ It further appears that but for counsel's error in having appellant testify before the jury, none of the 14 convictions from Louisiana, federal court, and Missouri would have been revealed. Appellant did not testify at the guilt stage of the trial, and none of the convictions were disclosed then. Nothing in the record indicates that the State could have proved these convictions without appellant's testimony. Indeed, the record indicates the opposite. Appellant at first denied seven of the Louisiana convictions, and consistently denied one of the federal convictions and the Missouri conviction. He admitted them only after the prosecutor inquired further. Indeed, the prosecutor reminded appellant that he was under oath, subject to prosecution for perjury, and told appellant that, "documentation of all of this information does exist somewhere...." The State produced no proof of any of the 14 convictions, except appellant's testimony before the jury on cross-examination.

Once trial counsel learned that 110646 had been reversed, he could have proved its voidness conclusively by checking the index to the Southwestern Reporter, or by calling the Harris County District Clerk to testify about the contents of file number 110646. This would have prevented a disclosure of the void conviction, instead of having the prosecutor request a not true verdict from puzzled jurors, who were understandably reluctant to find a proved fact not true without an explanation from the court.

Finally, we note that trial counsel failed to object to an inadmissible portion of the penitentiary packet from cause number 389272, the subject of the second enhancement paragraph. That judgment reflects that appellant was convicted of unauthorized use of a motor vehicle, "and heretofore the defendant had been once previously convicted of a felony, but upon motion of the State the enhancement paragraph was abandoned and dismissed...." Such language should have been excised from the exhibit upon timely and proper objection.

Thus, if defense counsel had excised the objectionable part of the judgment in cause number 389272, and had obtained a hearing outside the jury's presence concerning cause number 110646, the jury would have heard of one prior conviction, rather than 16. The jury would have then determined an appropriate punishment for a 56–year-old defendant convicted of a second degree felony property offense, whose only validly proved previous conviction had occurred two years before and was for the third degree felony property offense of unauthorized use of a motor vehicle. The punishment range would have been five years to life, rather than 25 years to life.

*Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), held that ineffective assistance of counsel is shown only when the attorney's errors are so serious that he was not functioning as counsel guaranteed by the sixth amendment, and in addition, the defendant was deprived of a fair trial because of the error. For an error to reach that magnitude, there must be a reasonable probability, that is, a probability sufficient to undermine confidence in the trial's outcome, that but for counsel's unprofessional errors, the result of the proceeding would have been different. However, the Supreme Court in *Strickland* also held:

> On the other hand, we believe that *a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case....* The result of a proceeding can be rendered unreliable, and hence, the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponder-

ance of the evidence to have determined the outcome.

*Id.* at 694, 104 S.Ct. at 2068 (emphasis added).

The court further wrote that the test was a flexible one, not rigid in application:

A court should keep in mind that the principles we have stated do not establish mechanical rules.... [T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding.... *In every case the court should be concerned with whether ... the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.*

*Id.* at 696, 104 S.Ct. at 2069 (emphasis added).

An attorney's performance must be gauged by the totality of his representation. *Mercado v. State,* 615 S.W.2d 225, 227–28 (Tex.Crim.App.1981). This does not mean, however, that relief will never be granted because of a single error solely affecting punishment. "Sometimes a single error is so substantial that it alone causes the attorney's assistance to fall below the Sixth Amendment standard." *Nero v. Blackburn,* 597 F.2d 991, 994 (5th Cir.1979). Courts have frequently found counsel ineffective because of a single error affecting only the punishment assessed. *Ex parte Scott,* 581 S.W.2d 181, 182 (Tex.Crim.App.1979); *May v. State,* 660 S.W.2d 888, 890 (Tex.App.—Austin, 1983), *aff'd,* 722 S.W.2d 699 (Tex.Crim.App.1984); *Snow v. State,* 697 S.W.2d 663 (Tex.App.—Houston [1st Dist.] 1985, pet. ref'd); *Burnworth v. State,* 698 S.W.2d 686 (Tex.App.—Tyler 1985, pet. ref'd). To ignore a grievous error simply because it is single, while granting relief where multiple errors cumulatively reach the same magnitude, would be contrary to the reasons that caused the creation of the doctrine of ineffective assistance of counsel. *See Snow v. State,* 697 S.W.2d at 667.

The adversarial process broke down at the punishment stage in the instant case. Counsel's attempt to avoid the effect of one void conviction resulted in the jury's hearing of 14 more convictions, at least two of which were also void, 12 of which were obtained prior to *Gideon v. Wainwright,* and none of which were proved by other evidence. Such a performance cannot be justified by any trial strategy within our imagination. Any reasonably competent attorney would have attacked the validity of cause number 110646 outside the jury's presence. Moreover, there is a strong possibility that avoiding this error would have brought about a lower sentence. We hold that the *Strickland* standard has been met. *See also Ex parte Cruz,* 739 S.W.2d 53 (Tex.Crim.App.1987).

Point of error one is sustained.

We must next determine the appropriate remedy. Formerly, a new trial on both guilt and punishment was required when the jury had assessed punishment and reversible error had occurred at the punishment stage. *Daniel v. State,* 585 S.W.2d 688, 693 (Tex.Crim.App.1979). Texas law changed in this respect on August 31, 1987, after the date of appellant's trial, when Texas Code of Criminal Procedure article 44.29 took effect. Section (b) of that article provides:

If the court of appeals or the Court of Criminal Appeals awards a new trial to the defendant only on the basis of an error or errors made in the punishment state of the trial, the cause shall stand as it would have stood in case the new trial had been granted by the court below, except that the court shall commence the new trial as if a finding of guilt had been returned and proceed to the punishment stage of the trial under Subsection (b), Section 2, Article 37.07, of this code. If the defendant elects, the court shall impanel a jury fo the sentencing stage of the trial in the same manner as a jury is impaneled by the court for other trials before the court. At the new trial, the court shall allow both the State and the defendant to introduce evidence to show the circumstances of the offense and other evidence as permitted by Section 3 of Article 37.07 of this code.

Appellant contends that this statute does not apply to his case on appeal, because it

did not take effect until after his trial ended. We disagree.

It has long been the law in Texas that when a judge, rather than a jury, assesses punishment and reversible error occurs at the punishment stage, the cause is remanded only for another punishment hearing; the finding of guilt is undisturbed. *Ex parte Hill*, 528 S.W.2d 125, 127 (Tex.Crim. App.1975); *Brumfield v. State*, 445 S.W.2d 732, 740 (Tex.Crim.App.1969).

A new trial to determine guilt is unnecessary to cure error at the punishment stage because, in a bifurcated trial, punishment stage error could not have affected the determination of guilt. The enactment of article 44.29(b) recognizes this fact and does away with the undesirable former procedure that granted more relief than was necessary to cure errors affecting only punishment. The statute protects the defendant's right to choose a judge or jury to assess punishment and protects all parties' rights to present evidence relevant to punishment. This is a vast improvement on former law, and such a statute should be construed so as to cure the harm that led to its enactment.

▇▇▇▇ The general rule is that absent an express provision to the contrary, procedural statutes control litigation from their effective date and apply to litigation then pending. *Wade v. State*, 572 S.W.2d 533, 534 (Tex.Crim.App.1978); *Granviel v. State*, 552 S.W.2d 107, 116 (Tex.Crim.App. 1976); *Wilson v. State*, 473 S.W.2d 532, 535 (Tex.Crim.App.1971). This is because a litigant has no vested right in a procedural remedy under the due course of law or ex post facto clauses of the Texas Constitution. *Merchants Fast Motor Lines, Inc. v. Railroad Comm'n of Texas*, 573 S.W.2d 502, 504–05 (Tex.1978).

▇▇▇▇ We have reviewed the legislature history of article 44.29. Neither the bill analysis or the tapes of hearings on Senate Bill 43 indicate whether the new law should be applied to persons whose crimes or trials occurred before its effective date.

We view article 44.29 as a procedural statute. *See Dobbert v. Florida*, 432 U.S.

282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977) (statute held procedural that gave judge death penalty sentencing discretion formerly reserved for jury; thus, it did not violate ex post facto clause of federal constitution to apply new law to a capital murder that occurred before its effective date, even though doing so deprived Dobbert of the benefit of a jury verdict that, under prior law, would have saved him from the death penalty). Article 44.29(b) does not punish an act that was innocent when done; it does not increase the punishment for a crime after its commission; and it does not abolish any defense to crime or lessen the State's burden of proof. "It is ... well settled ... that the (ex post facto clause) does not give a criminal a right to be tried, in all respects, by the law in force when the crime charged was committed." 432 U.S. at 293, 97 S.Ct. at 2298 (citation omitted). The ex post facto clause was "not (intended) to limit the legislative control of remedies and modes of procedure which do not affect matters of substance." *Id.* Moreover, "[e]ven though it may work to the disadvantage of a defendant, a procedural change is not ex post facto." *Id.*

The rule in *Dobbert* is consistent with the long-standing rule in Texas. "Laws which affect the remedy or procedure merely are not within the scope of the inhibition against retroactive laws, unless the remedy be entirely taken away or so encumbered with conditions as to render it useless or impracticable." *Ex parte Roper*, 61 Tex. Crim. 68, 134 S.W. 334, 339 (1911). Thus, the court has upheld a statute that abolished appeals from trials resulting in suspended sentences, *Millican v. State*, 145 Tex.Crim. 195, 167 S.W.2d 188 (1942), and a statute that tolled the statute of limitations after an offense was committed, *Hill v. State*, 146 Tex.Crim. 333, 171 S.W.2d 880 (1943) (affirming a death penalty, after retrial following reversal by the United States Supreme Court, despite the fact that defense counsel filed no appellate brief).

The statute upheld in *Millican* went further than article 44.29(b). It deprived the probationer of an entire stage of proceedings, i.e., the appellate review of the "first conviction," 167 S.W.2d at 190. The court

held that the right to appeal in Texas was entirely statutory, not constitutional, and existed "only as a legislature privilege," for the legislature "to award as it saw fit." *Id.* Because "the right of review pertains merely to the remedy, and it is not a natural, inherent, or vested right," it is "within the power of the legislature ... to impose such conditions and restrictions as it may see fit, even when federal rights or questions are involved." *Id.* The legislature "had the right to give, and having given, would have the right to take away." *Id.*[1] A legislature having such power surely would be empowered to limit the court-made remedy for punishment stage error. *See Hill v. State,* 171 S.W.2d at 884.

Considering the purpose and content of the statute, the absence of a contrary legislative history, and the Texas and federal authorities cited, we hold that article 44.-29(b) provides the proper remedy in this case.

The judgment is reversed only as to the assessment of punishment, and the cause is remanded for a punishment hearing in accordance with article 44.29. The remainder of the opinion is ordered not published.

---

1. Likewise, there is no right under the United States Constitution to appeal a state court criminal conviction, *Griffin v. Illinois,* 351 U.S. 12, 18, 76 S.Ct. 585, 590, 100 L.Ed. 891 (1956), much less a right to a new trial on guilt as an appellate remedy for error at the punishment stage.